**Corrected**

2020 IL App (1st) 190318-U

No. 1-19-0318

Third Division

September 22, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| EDWARD M. BURKE, in his capacity as successor trustee of the Laurel Christine Trust dated January 11, 1996, and COLLEEN REMEYER, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY McKERNAN, individually, and as co-trustee of the McKernan Arnold Family Trust, YVONNE McKERNAN, co-trustee of the McKernan Arnold Family Trust, THE McKERNAN ARNOLD FAMILY TRUST, EDWARD J. McKERNAN, JIM LEMMONS, THE E.J. McKERNAN CO., RICHARDS PACKAGING INCOME FUND, RICHARDS PACKAGING HOLDINGS (US), INC., RICHARDS PACKAGING, INC., TIMOTHY F. WEYER, and MICHAEL PARISE, | ) ) ) ) ) ) ) ) ) ) ) | No. 08 CH 10799 Honorable Peter Flynn, |
| Defendants-Appellees.[1] | ) | Judge, presiding. |

_____

[1] We note that appellants' notice of appeal incorrectly listed this case's caption. To avoid confusion, we have chosen to use the correct caption, which matches the caption reflected in the operative complaint in the record, in this disposition. For this reason, the caption used in this disposition differs from the title used to docket this matter in our records.

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The judgment of the circuit court is affirmed. The court did not err in dismissing certain defendants for lack of personal jurisdiction, in dismissing one of plaintiffs' claims for failure to state a cause of action, and in granting summary judgment for defendants on the remaining claims based on expiration of the statute of limitations.

¶ 2    This appeal concerns a long-standing dispute over the ownership of 470 shares in the E.J. McKernan Co., an Illinois corporation that manufactures and sells packaging materials ("the Corporation"). Plaintiffs, Edward M. Burke, as successor trustee of the Laurel Christine Trust ("the LC Trust"), and Colleen Remeyer, as a beneficiary thereof, contend that the LC Trust is the rightful owner of the disputed shares, having received them from Thomas McKernan ("Thomas") in 1996. The current litigation regarding the shares commenced in March 2008, when Remeyer filed her initial complaint against Edward J. McKernan ("Edward"), Timothy McKernan ("Timothy"), and James Lemmons. Burke was later added as a plaintiff in his capacity as successor trustee, and plaintiffs eventually filed a third amended complaint, which was dismissed in its entirety. Plaintiffs then appealed, and this court affirmed in part and reversed in part. See *Burke v. McKernan*, 2011 IL App (1st) 100287-U ("*Burke I*").

¶ 3    On remand, plaintiffs refiled a fifth amended complaint, which is the subject of this appeal. That complaint raised various claims related to the disputed shares against Timothy, Edward, and Lemmons, as well as Yvonne McKernan ("Yvonne"), Timothy Weyer, Michael Parise; the McKernan Arnold Family Trust ("the MAF Trust"); the Corporation; and the Richards Packaging Income Fund, Richards Packaging Holdings (US), Inc., and Richards Packaging, Inc. (collectively,

"the Richards defendants"). Plaintiffs now appeal from several different orders of the circuit court (1) dismissing Yvonne, the MAF Trust and the Richards defendants for lack of personal jurisdiction, (2) granting Weyer and Parise's motion to dismiss count VII of the complaint for failure to state a cause of action, and (3) granting summary judgment for defendants on all other counts based on the statute of limitations. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5                            A. Original Distribution of Shares

¶ 6      Edward J. McKernan, the father of Timothy, Thomas, and Remeyer, founded the Corporation in 1960. Prior to 1984, Edward and his wife Laurel owned all 1000 shares of the Corporation's stock. In January 1984, they gifted 470 shares to Timothy and 470 to Thomas. The remaining 60 shares were transferred to Edward in his own name. Timothy acquired Edward's 60 shares in April 1995, giving Timothy a total of 530 shares.

¶ 7      Shortly thereafter, in May 1995, Edward sent Thomas a letter demanding that Thomas return his 470 shares to the Corporation. Edward's letter asserted that Thomas had defaulted on his promise to provide Edward "as many dollars as he wanted/needed, but not to the detriment of [the Corporation]" as "consideration" for the gift of stock. Thomas did not return the shares.

¶ 8      In November 1995, Edward and Timothy called an emergency meeting of the Corporation's board of directors. The board passed a resolution purportedly declaring Thomas' 470 shares null and void and reissuing them to Edward. Thomas was allegedly not informed about the meeting or the resolution.

¶ 9                                    B. The LC Trust

¶ 10   Thomas created the LC Trust in January 1996, naming his two sisters, Patricia McLatcher and Remeyer, as beneficiaries. Paul Polichio was designated as trustee. The trust property included the 470 disputed shares, which Thomas purportedly transferred to Polichio as trustee. Under the terms of the Trust Agreement, the trustee was to distribute "[o]ne half of the assets remaining in the trust in equal amounts to each of the beneficiaries within five (5) years of the date of the execution of this agreement" and "[a]ny remaining assets in the trust in equal amount to each of the beneficiaries within ten (10) years of the date of the execution of this agreement."

¶ 11   On February 7, 1996, attorney Bradley Anderson, representing Thomas and the LC Trust, sent a letter to the Corporation returning Thomas' original stock certificate and requesting that the Corporation reissue the stock in the name of the trust. The Corporation never reissued the shares.

¶ 12                         C. Stock Repurchase Agreement

¶ 13   In July 2002, Edward and the Corporation entered into a Stock Repurchase Agreement whereby Edward sold the 470 disputed shares back to the Corporation for $1,034,000. In the Agreement, Edward warranted that he owned the shares "free and clear of all liens, encumbrances, and restrictions on transfer," and had "the full power and authority" to sell the shares. The Agreement was signed by both Edward as the seller and Timothy as the President of the Corporation. After the Agreement was executed, the Corporation purported to retire the stock, making Timothy the sole owner with all 530 outstanding shares.

¶ 14                         D. Sale of the Corporation

¶ 15   In May 2005, the shareholders and directors of the Corporation held a meeting in San Diego, California. Directors Timothy, Weyer, and Parise were in attendance. The minutes from that meeting reflect that Richards Packaging had agreed to buy the Corporation for $30 million.

However, Richards Packaging "pulled out at the last minute" because Thomas would not sign a release regarding the disputed shares. Since that time, Timothy had spent "considerable time cleaning up the company for sale and working on securing the documents to clear up any past stock issue."

¶ 16    In 2007, Timothy began negotiating with Remeyer to settle ownership of the disputed shares. According to Remeyer, Timothy offered her $500,000 to release any claim she might have to the shares. However, the settlement negotiations were unsuccessful.

¶ 17    On October 31, 2007, Timothy, with board approval, assigned his 530 shares to the MAF Trust, a Nevada trust for which he and Yvonne, his wife, serve as co-trustees. That same day, also with board approval, the MAF Trust sold those shares to Richards Packaging, Inc. for $30 million. The Share Purchase Agreement states that the 530 shares constitute "all the issued and outstanding shares in the capital of the Corporation." The Agreement also contained an Illinois choice-of-law provision and an Illinois forum selection clause.

¶ 18                    E. *Burke I*

¶ 19    Remeyer filed her initial complaint in this matter on March 21, 2008, naming Edward, Timothy, and Lemmons as defendants. The initial and first amended complaints were both dismissed upon defendants' motion. A second amended complaint was then filed that added Burke as an additional plaintiff in his capacity as successor trustee of the LC Trust. The circuit court again dismissed the complaint on defendants' motion.

¶ 20    Plaintiffs filed their third amended complaint on April 15, 2009. The third amended complaint alleged seven counts: (I) declaratory judgment regarding ownership of the disputed shares, (II) breach of fiduciary duty by Timothy and Lemmons, (III) constructive trust of a portion

of the sale proceeds, (IV) civil conspiracy by Edward and Timothy, (V) conversion of the disputed shares by Timothy, (VI) conversion/fraudulent concealment by Edward and Timothy, and (VII) wrongful registration of a security. On January 8, 2010, the circuit court granted defendants' motion to dismiss with prejudice pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). Specifically, the court ruled that counts I, IV, and VII were not commenced within the time permitted by law. See 735 ILCS 5/2-619(a)(5) (West 2010). Counts II, III, V, VI were dismissed pursuant to section 2-619(a)(9), which applies when a claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). Plaintiffs appealed.

¶ 21 On appeal, we first considered whether plaintiffs' declaratory judgment action was filed within the relevant limitations period, which was five years from the date on which plaintiffs knew or reasonably should have known about a dispute over the shares. *Burke I*, 2011 IL App (1st) 100287-U, ¶ 26 (citing 735 ILCS 5/13-205 (West 2008)). Plaintiffs argued that they did not learn of a potential dispute over the shares until July 2007, when Timothy approached Remeyer about settling any claim she might have. *Id.* ¶ 27. Defendants contended that plaintiffs should have known about the dispute as early as 1996, when the Corporation refused to reissue the stock certificate in response to attorney Anderson's letter. *Id.* ¶ 28. Alternatively, defendants argued that plaintiffs were on notice by 2001, when the trustee was supposed to distribute the first half of the trust's assets. *Id.* ¶ 29.

¶ 22 We held that "[t]he claim clearly accrued by 2001, when the trustee knew or should have known he was required to make a distribution of the stock under the Trust." *Id.* ¶ 30. Thus, because

Remeyer did not file her initial complaint until more than seven years later, we held that the declaratory judgment action was barred by the statute of limitations. *Id.*

¶ 23    Similarly, we held that count IV (civil conspiracy to defraud plaintiffs of the disputed shares) was also untimely because it too accrued by 2001, when the trustee was prevented from making the required distribution of the shares. *Id.* ¶ 36. Additionally, we affirmed the dismissal of count VII (wrongful registration of a security) on the grounds that plaintiffs failed to notify the Corporation of the alleged wrongdoing within a reasonable time. *Id.* ¶¶ 40-43.

¶ 24    With regard to counts II, III, and V, defendants asserted two affirmative matters warranting dismissal: (1) Colleen's lack of standing and (2) plaintiffs' reliance on privileged communications that Edward and Timothy had with one of the Corporation's attorneys. We rejected the standing argument, reasoning that the beneficiary of a trust is often a necessary party to a lawsuit involving trust property and that, in any event, Burke had standing as successor trustee. *Id.* ¶ 47. We also found that whether defendants had waived attorney-client privilege raised a genuine issue of material fact that rendered dismissal improper. *Id.* ¶ 48. Consequently, we reversed the dismissal of counts II, III, and V. *Id.* ¶ 52.

¶ 25                           F. The Present Case

¶ 26    Upon remand, plaintiffs filed an eight-count, fourth amended complaint against Timothy, Yvonne, Edward, Lemmons, Weyer, Parise, the MAF Trust, the Corporation, and the Richards defendants.[2] Defendants filed various motions to dismiss the fourth amended complaint, which were granted in part and denied in part.

---

[2] The fourth amended complaint also named John Lewis, a director of the Corporation, as a defendant. However, Lewis was removed from the suit after his death and is not a party to this appeal.

¶ 27    After the circuit court's rulings on those motions, plaintiffs refiled a fifth amended complaint asserting the following seven counts:[3] (I) breach of fiduciary duty against Timothy and Lemmons, (III) conversion against Timothy, Yvonne, and the MAF Trust, (IV) conversion/fraudulent concealment against Timothy and Edward, (V) constructive trust against the Richards defendants, (VI) constructive trust against Timothy, Yvonne, and the MAF Trust, (VII) breach of fiduciary duty against Weyer and Parise, and (VIII) unjust enrichment against Timothy, Yvonne, and the MAF Trust. Defendants again filed various motions to dismiss. The circuit court granted Weyer and Parise's motion to dismiss count VII for failure to state a cause of action, as well as motions to dismiss Yvonne, the MAF Trust, and the Richards defendants for lack of personal jurisdiction. Plaintiffs filed a motion for the court to reconsider its rulings on the personal jurisdiction issues, which was denied.

¶ 28    On April 16, 2018, Timothy and Lemmons filed a motion for summary judgment on all remaining counts based on, among other things, the expiration of the relevant statutes of limitations. After briefing and argument, the circuit court granted the motion, reasoning that *Burke I* barred plaintiffs from arguing that the LC Trust owned the disputed shares. The court also denied plaintiffs' motion to reconsider its ruling. This appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30                              A. Personal Jurisdiction

¶ 31    We first consider whether the circuit court erred in dismissing Yvonne, the MAF Trust, and the Richards defendants for lack of personal jurisdiction.

---

[3] The fifth amended complaint left count II blank, as count II had been dismissed from the fourth amended complaint as duplicative of count VI.

¶ 32　　It is well-established that the plaintiff bears the burden of showing a *prima facie* basis for exercising personal jurisdiction over a foreign defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. Where, as here, the circuit court decides a jurisdictional question based solely on the documentary evidence without holding an evidentiary hearing, our review is *de novo*. *Id.*

¶ 33　　The exercise of personal jurisdiction by an Illinois court over a foreign defendant is governed by section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2018)), which is commonly referred to as the Illinois long-arm statute. *Id.* ¶ 29. Under the long-arm statute, an Illinois court may exercise personal jurisdiction over a defendant only if the defendant's contacts with Illinois are sufficient to satisfy both Illinois and federal due process. *Id.* ¶ 30. Because the parties do not argue that the Illinois Constitution imposes stricter restraints on the exercise of personal jurisdiction than the federal constitution, we may consider only federal constitutional principles. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 13.

¶ 34　　Federal due process allows a state court to exercise personal jurisdiction over a foreign defendant only if that defendant has sufficient minimum contacts with the state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *Id.* ¶ 14 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 216 (1945)). Personal jurisdiction can be either general or specific. General jurisdiction exists when the defendant's contacts with the state are so continuous and systematic that the defendant can fairly be sued in the state for any purpose. *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 45. In contrast, a court has specific jurisdiction over a defendant only if the controversy at issue arises from the defendant's contacts with the forum state. *Id.* Thus, where there is no connection between the defendant's contacts with the forum state and the given

controversy, there is no specific jurisdiction regardless of the defendant's unrelated connections to the state. *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶ 18. The critical question is whether the defendant's contacts with the state are such that the defendant " 'should reasonably anticipate being haled into court there.' " *Madison Miracle Productions*, 2012 IL App (1st) 112334, ¶ 53 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

¶ 35                         1. Personal Jurisdiction over Yvonne and the MAF Trust

¶ 36    Here, there is no dispute that the MAF Trust was created in Nevada, operates under the laws of Nevada, and is administered by Nevada trustees solely for Nevada beneficiaries. Similarly, Yvonne is a Nevada resident who has no property or physical presence in Illinois. Accordingly, plaintiffs do not argue that the circuit court could have exercised general jurisdiction over either Yvonne or the MAF Trust. Instead, plaintiffs argue that specific jurisdiction exists because their claims involve the sale of the Corporation by the MAF Trust (of which Yvonne is co-trustee) under a Share Purchase Agreement that contained an Illinois forum selection clause. That provision states in relevant part that each party to the Agreement:

" (a) agrees that any suit, action or other legal proceeding arising out of this Agreement may be brought in the United States District Court in Cook County, Illinois, or if such court does not have jurisdiction or will not accept jurisdiction, in any court of record of general jurisdiction in Cook County, Illinois; [and]

(b) consents to the jurisdiction of any such court in any such suit, action or proceeding[.]"

¶ 37    Defendants argue, and the trial court found, that this provision cannot be read to mean that the MAF Trust and Yvonne consented to jurisdiction in this case. We agree. Although plaintiffs' claims are connected to the sale of the Corporation, they do not arise out of any alleged breach of

the Share Purchase Agreement itself. Additionally, as plaintiffs were not parties to the Share Purchase Agreement, we cannot say that the Agreement contemplated a suit such as plaintiffs' being brought in Illinois. The MAF Trust and Yvonne could not reasonably have foreseen being hauled into an Illinois court by a third party who had nothing to do with the Share Purchase Agreement. See *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 847 (2001) (the circuit court could not exercise personal jurisdiction over a defendant coal company where, although the company purchased the power plant at issue under written agreements that contained Illinois choice-of-law and forum selection clauses, the plaintiffs "[we]re not parties to any of the Illinois transactions involving [the defendant company] and [we]re not seeking to recover for a breach of any of the agreements underlying these transactions").

¶ 38    Plaintiffs nevertheless maintain that this court's decision in *Solargenix Energy, LLC v. Acciona S.A.*, 2014 IL App (1st) 123403, represented a change in the law from the time the circuit court ruled on defendants' motion to dismiss such that "the prevailing Illinois law now is clearly that a non-party to a contract containing a forum selection clause can avail itself of the benefits of said clause." However, the issue in *Solargenix* was whether two foreign parent companies could be bound by a forum selection clause in agreements between the plaintiff and the parents' American subsidiaries. *Solargenix*, 2014 IL App (1st) 123403, ¶¶ 30-31. *Solargenix* is thus completely distinguishable from the case at hand, as the plaintiffs here are not parties to the contract which they seek to enforce. Additionally, the *Solargenix* court ruled that the parent companies could reasonably expect to be bound by the forum selection clause where they negotiated and approved the agreement, were primarily responsible for performing the international aims of the agreement, and signed a letter of adhesion in which they agreed to be

bound by the agreement. *Id.* ¶ 50. All of these factors are clearly absent here, as plaintiffs had no role in the formation of the Share Purchase Agreement and none of the defendants consented to allowing plaintiffs to enforce the terms of the Agreement. As such, *Solargenix* has no bearing on this case.

¶ 39                                          2. Personal Jurisdiction over the Richards Defendants

¶ 40     Plaintiffs also argue that the circuit court erred in dismissing the Richards defendants for lack of personal jurisdiction. Plaintiffs contend that the circuit court had personal jurisdiction over the Richards defendants because (1) the Share Purchase Agreement contained an Illinois forum selection clause and (2) the Richards defendants were "doing business" in Illinois through the Corporation, its Illinois subsidiary.

¶ 41     For the same reasons discussed above, plaintiffs' arguments regarding the forum selection clause and *Solargenix* with respect to the Richards defendants are without merit. As for plaintiffs' "doing business" argument, we acknowledge that Illinois courts will, in some circumstances, exercise general personal jurisdiction over a foreign parent company based on the parent's relationship to its Illinois subsidiary. See *Palen v. Daewoo Motor Co., Ltd.*, 358 Ill. App. 3d 649, 661 (2005). However, although a parent company necessarily controls, directs, and supervises its wholly-owned subsidiaries to some extent, an Illinois court may not exercise personal jurisdiction over a foreign parent company simply because the court has general jurisdiction over an Illinois subsidiary. *Id.* at 660. Instead, an Illinois court has personal jurisdiction over the parent only if the subsidiary is " 'acting as the parent corporation's Illinois agent in the sense of conducting the parent's business rather than its own.' " *Old Orchard Urban Limited Partnership v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 66 (2009) (quoting *Alderson*, 321 Ill. App. 3d at 855).

¶ 42 In determining whether a parent corporation is doing business in Illinois through a local subsidiary, a court should consider such factors as (1) the control exercised by the parent over the subsidiary, (2) the obligations of the subsidiary to service the parent's products, (3) the inclusion of the subsidiary in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) the location of the meetings for the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement in the parent's name. *Palen*, 358 Ill. App. 3d at 661. The critical inquiry is whether the subsidiary exists for no purpose other than conducting the parent's business. *Old Orchard*, 389 Ill. App. 3d at 66.

¶ 43 Applying these principles to the present case, it is clear that plaintiffs have not carried their burden of establishing that the Corporation exists solely to conduct the business of the Richards defendants. Plaintiffs' refiled fifth amended complaint contains no facts relevant to the determination other than the conclusory assertion that the Richards defendants are doing business in Illinois. In response to the Richard defendants' motion to dismiss, and on appeal, plaintiffs observe that (1) Gerry Glynn, a director of the Corporation, is a trustee of the Richards Packaging Income Fund and a director or officer in several other subsidiaries, and (2) the Fund provides funds for its subsidiaries, including the Corporation. Plaintiffs also contend that the Fund's 2012 Annual Report "confirms the interlocking relationship of each of the Richards Entities to each other" by listing the combined revenue of the Richards Packaging's various subsidiaries and describing them as members of the "Richards Packaging Family." In our view, plaintiffs raise nothing indicative of an abnormal parent-subsidiary relationship, and certainly nothing suggesting that the Corporation does not conduct its own business. See *Old Orchard*, 389 Ill. App. 3d at 67-68 (finding no personal jurisdiction over parent despite the fact that it supplied the officers and directors of its

Illinois subsidiaries, procured the initial funding for the subsidiaries, and controlled the cash flow between itself and the subsidiaries); see also *J.L.B. Equities, Inc. v. Ocwen Financial Corp.*, 131 F. Supp. 2d 544, 500 (S.D.N.Y. 2001) (consolidated annual reports are common and do not serve as a basis to extend jurisdiction to a parent company). As such, the circuit court had no basis on which to exercise personal jurisdiction over the Richards defendants.

¶ 44                                B. Statute of Limitations

¶ 45    We next consider whether the circuit court erred in granting summary judgment for Timothy and Lemmons on counts I, III, IV, VI, and VIII. Summary judgment is warranted where there are no genuine issues of material fact and the moving party's right to judgment is clear and free from doubt. *Lewis v. Lead Industries Association*, 2020 IL 124107, ¶ 15. Although the date on which the statute of limitations was triggered is often a factual question that precludes summary judgment, summary judgment is nevertheless appropriate where the facts known to the plaintiff are not in dispute and there is only one conclusion that can be drawn from them. *LaSalle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 902-03 (1994). A circuit court's grant of summary judgment is reviewed *de novo*. *Lewis*, 2020 IL 124107, ¶ 15.

¶ 46    Defendants argue that *Burke I* establishes that plaintiffs' claims accrued in 2001 because the gravamen of the allegations is that plaintiffs were wrongfully divested of the disputed shares when the Corporation declared them null and void in 1995. As plaintiffs' claims are all subject to a five-year limitations period (see 735 ILCS 5/13-205 (West 2000)), defendants therefore contend that the 2008 complaint was untimely.

¶ 47    Plaintiffs, on the other hand, argue that defendants' (and the circuit court's) position is based on a flawed interpretation of *Burke I*. In particular, plaintiffs contend that *Burke I* is of little

importance here because this court decided only that they were too late to seek the remedy of a declaratory judgment. Stated another way, plaintiffs submit that *Burke I* did not decide that they did not own the disputed shares or that they could not assert ownership over the disputed shares in the context of a different claim. Although plaintiffs acknowledge that their ownership of the disputed shares is a "necessary element" of their claims, they maintain that the claims themselves did not arise until the Corporation was sold to Richards Packaging in 2007. Thus, plaintiffs conclude that their 2008 complaint was timely filed.

¶ 48 Initially, we note that plaintiffs take issue with the circuit court's statement that *Burke I* barred their claims under the doctrine of *res judicata*. Plaintiffs contend that the denial of their declaratory judgment action is not *res judicata* because, as that action was dismissed on statute of limitations grounds, there was no final adjudication of the merits. See *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 77 (1994) (grant of summary judgment based on statute of limitations is not an adjudication on the merits for *res judicata* purposes). Defendants submit that the trial court merely misidentified the type of preclusion relevant here and instead meant law of the case. Like *res judicata*, the doctrine of law of the case generally bars the relitigation of issues previously decided in the same case. *Fox Valley Families Against Planned Parenthood v. Planned Parenthood of Illinois*, 2018 IL App (2d) 170137, ¶ 9. Plaintiffs counter that their claims are not barred by law of the case either because the issue of ownership of the disputed shares has never been litigated. See *id.* (matters not decided by a previous appellate decision do not become law of the case).

¶ 49 Plaintiffs are correct that *Burke I* did not decide that they did not own the disputed shares. However, what we did decide—and what is now the law of the case—is that plaintiffs' claim to

the disputed shares accrued in 2001, when they were legally on notice that they were not being treated as shareholders. Although plaintiffs now attempt to frame their claims around the 2007 sale to Richards Packaging, it is plainly evident from the face of their complaint that the claims stem from the allegedly wrongful acts that occurred in the 1990s. Indeed, plaintiffs have essentially conceded that their shareholder status would be the main issue at a trial, which would necessarily require evidence from the time Thomas' shares were declared null and void. This strikes directly at the purpose of statutes of limitations, which is to require diligence in the bringing of claims so as to prevent the loss or impairment of available evidence. *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 32; see also *Sundance Homes, Inc. v. County of DuPage*, 195 Ill. 2d 257, 266 (2001) (statutes of limitations are premised on the notion that "predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice").

¶ 50 Although we are aware of no Illinois case directly on point, we find the Alaska Supreme Court's decision in the analogous case of *Egner v. Talbot's, Inc.*, 214 P.3d 272 (2009), to be persuasive. There, the plaintiff alleged that her father, a director and officer of Talbot's, Inc., repeatedly told her that she owned Talbot's stock and showed her a ledger reflecting the same. *Id.* at 275. When the plaintiff's father died, his wife Jane inherited his shares and informed the plaintiff that the plaintiff did not own any stock. *Id.* In 1986, the plaintiff learned that Jane sold Talbot's to the plaintiff's brother-in-law. *Id.* at 276.

¶ 51 The plaintiff further alleged that, in 1995, Jane asked her to sign a stock certificate representing that the plaintiff owned at least 100 shares of Talbot's stock. *Id.* In February 2006, the plaintiff submitted a written request to review Talbot's corporate records, which Talbot's denied on the grounds that she was not a shareholder. *Id.* In May 2006, plaintiff sued Talbot's and

several relatives who owned Talbot's stock, asserting claims for the failure to allow her to inspect the corporate records, the denial of various other shareholder rights, breach of fiduciary duty, and conversion of her shares. *Id.* at 276-77. The defendants were granted summary judgment based on the expiration of the applicable six-year statute of limitations. *Id.* at 277.

¶ 52 On appeal, the Alaska Supreme Court first determined that the plaintiff's cause of action accrued "no later than 1986" because it was at that point that she should have been aware that she was not being treated as a shareholder. *Id.* at 280-81. The court also found that the events occurring after 1986 did not extend the time for the plaintiff to bring a claim, reasoning that the wrongful conduct alleged by the plaintiff was essentially "the denial of her alleged shareholder status," which she should have known had been permanently violated by 1986. *Id.* Thus, the court concluded that:

> "Proving a continuing violation of her shareholder rights would necessarily require [the plaintiff] to prove that the defendants wrongfully (or erroneously) denied [her] shareholder status, a claim for which the statute of limitations has long since expired. The denial that [the plaintiff] was a shareholder was a permanent denial of [her] claim to shareholder status. That denial precludes us from relying on evidence of [her] shareholder status to support claims for alleged shareholder's rights denials occurring within the relevant statutory periods." *Id.* at 283.

¶ 53 Here, like in *Egner*, plaintiffs' claims stem from a permanent denial of their shareholder status for which they were on notice seven years before the filing of the initial complaint. As the causes of action plaintiffs assert are all subject to the five-year limitations period in section 13-205 of the Code (735 ILCS 5/13-205 (West 2016)), they are untimely. The fact that plaintiffs continue

to be treated as non-shareholders outside the limitations period is immaterial, and does not revive their ability to assert expired claims.

¶ 54    Plaintiffs nevertheless argue that barring their claims on limitations grounds is inconsistent with *Burke I*, as we previously remanded on several counts for which ownership of the disputed shares was a necessary element. However, the timeliness of those claims was not before the court, and we consequently did not consider that issue. Accordingly, we are not bound to hold that plaintiffs may timely assert ownership of the disputed shares, as "[a] reviewing court opinion is a precedent only for what is actually decided, and it is not a precedent for issues that could have been decided but were not." *In re David B.*, 367 Ill. App. 3d 1058, 1067 (2006).

¶ 55    We are also not persuaded by plaintiffs' insistence that this case is "on all fours" with *Connelly v. Estate of Dooley*, 96 Ill. App. 3d 1077 (1981). There, the plaintiff alleged that he owned a 5% share in a law firm, with the other 85% and 10% owned by two other attorneys. *Id.* at 1079-80. In 1976, after the plaintiff had left the firm, the two remaining attorneys sold the firm's assets and retained 90% and 10% of the proceeds, respectively. *Id.* at 1080. Upon the majority owner's death in 1978, the plaintiff brought claims against the estate seeking either 5% of the firm's profits since 1966 or 5% of the sale proceeds. *Id.* Both of the plaintiff's claims were dismissed for failure to state a cause of action, and the plaintiff appealed. *Id.*

¶ 56    We reversed on appeal, finding that the plaintiff had adequately plead a claim of conversion against the estate. *Id.* at 1081-82. We also rejected the estate's statute of limitations argument, finding that (1) the plaintiff's claim for profits was not barred on its face because there were factual issues to be resolved regarding when the plaintiff first discovered the decedent had taken an adverse interest and (2) the plaintiff's claim for sale proceeds was not barred because the

limitations period began to run in 1976, when the sale and distribution of proceeds occurred. *Id.* at 1083.

¶ 57    Here, unlike in *Connelly*, there is no factual dispute about when plaintiffs were on notice of the denial of their shareholder rights. It is now the law of the case that this occurred in 2001, seven years before the initial complaint was filed in 2008. Moreover, the plaintiff in *Connelly* was allegedly unaware that he was not considered a shareholder until he did not receive a share of the sale proceeds in 1976. He then promptly filed a claim just two years later in 1978. In contrast, plaintiffs here were never treated as shareholders since purportedly acquiring shares in 1996, and, despite learning in 2001 that their shareholder status was being denied, plaintiffs waited until 2008 to take legal action. Under these circumstances, plaintiffs' claims are barred by the statute of limitations and the circuit court therefore did not err in dismissing them.

¶ 58                              C. Dismissal of Count VII

¶ 59    Finally, plaintiffs argue that the circuit court erred in granting Weyer and Parise's motion to dismiss count VII (breach of fiduciary duty) pursuant to section 2-615 of the Code of Civil Procedure. A section 2-615 motion challenges the legal sufficiency of the complaint on its face. *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 21. When reviewing the sufficiency of the complaint, a court accepts all well-pleaded facts as true and construes the allegations in light most favorable to the plaintiff. *Id.* An action should be dismissed under section 2-615 only if it is clear that there are no set of facts that would entitle the plaintiff to recovery. *Id.* Dismissal under section 2-615 is appropriate where it is apparent from the face of the complaint that the statute of limitations has expired. *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill. App. 3d 446, 456 (2006). We review the circuit court's ruling *de novo* and may affirm on

any basis appearing in the record. *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8.

¶ 60    To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) the defendant owed a fiduciary duty, (2) the defendant breached that duty, and (3) the breach proximately caused injury to the plaintiff. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. The theory behind count VII is that Weyer and Parise owed a fiduciary duty to plaintiffs because plaintiffs were minority shareholders by virtue of their ownership of the disputed shares. Plaintiffs further alleged that Weyer and Parise breached that duty by approving the sale to Richards Packaging without first inspecting the Corporation's books and records. Specifically, plaintiffs maintain that, had Weyer and Parise exercised due diligence, they would have discovered that the disputed shares were still outstanding and held by the LC Trust. As such, plaintiffs' theory—and the existence of a fiduciary duty to them in the first place—rests upon their assertion that they were wrongfully divested of the disputed shares long ago. Accordingly, count VII, like plaintiffs' others claims, arises principally from the underlying stock ownership dispute rather than the sale to Richards Packaging. For the same reasons explained above, such a claim is untimely, and the circuit court therefore properly dismissed it.

¶ 61                                    III. CONCLUSION

¶ 62    In sum, the circuit court did not err in refusing to exercise personal jurisdiction over Yvonne, the MAF Trust, or the Richards defendants based on insufficient Illinois contacts. The circuit court also properly dismissed count VII and granted summary judgment for defendants on the remaining counts where those claims arose from a dispute for which the statute of limitations had expired.

¶ 63   Affirmed.