# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3451

_____

Joseph H. Whitney

*Plaintiff - Appellant*

v.

The Guys, Inc.; Agora Solution Corp.; MyBillingServices, Inc.; Info Billing, Inc.;
MyTeleservices, Inc.; LaurenTel, Inc.; GreenTreeData, Inc.; LowCostBilling, Inc.;
YourBillingSolutions, Inc.; MySuperLotto, Inc.; MyPrizeAwards Corp.;
MyServiceAndSupport, Inc.; XYZ, Inc.; John R. Morrison

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: January 11, 2016
Filed: June 24, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Joseph H. Whitney appeals from a grant of summary judgment finding his claims time barred. We affirm.

I.

Whitney entered into a business relationship with John R. Morrison. Whitney characterizes the relationship as a partnership that eventually involved several corporations. We discussed the relationship and the various corporations in a prior opinion and do not repeat those facts here. See Whitney v. The Guys, Inc., 700 F.3d 1118, 1121–23 (8th Cir. 2012).

In the prior appeal, we reviewed a grant of a motion to dismiss. Id. at 1121. We affirmed the district court's choice-of-law and statute-of-limitations rulings as to several claims and also its grouping of claims and dismissal of redundant claims. Id. We held, however, that Whitney had sufficiently pleaded shareholder-rights claims under Delaware law to meet the plausibility standards of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007). Id.

On remand, the defendants filed an answer and counterclaims. The counterclaims alleged Whitney had caused payments of about $200,000 to be diverted from one of the subject companies to a bank account ultimately controlled by Whitney. Whitney characterizes the diversion as a rightful self-help remedy to capture a portion of funds he believed he was entitled to receive from the enterprise.

Eventually, the parties filed cross motions for summary judgment. The district court,[1] applying Delaware law, determined that a three-year statute of limitations applied and that the filing of the original complaint in October 2010, served as the reference point for calculating the latest possible date of permissible claim accrual: October 2007.

---

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

Using this date, the court cited an email Whitney had sent to Morrison on July 20, 2007. In the email, Whitney complained to Morrison about a lack of access to information or income from the companies. The court also referenced deposition testimony from Whitney in which Whitney described the email as referencing all of his alleged interests in the various companies. In the deposition testimony, Whitney claimed to have demanded documentation and financial records for "months and months" prior to sending the email. Finally, Whitney stated that, after he sent the email and received no response, he met with an attorney in July or August 2007 but did not initiate suit until October 2010. The district court held the email showed Whitney was, at a minimum, on inquiry notice by July 20, 2007 that Morrison was not recognizing his status or rights as a shareholder in the companies.

The court also conducted an analysis to determine whether the shareholder claims at issue were of the type that accrue once or whether new claims "re-accrue" with each additional corporate act the plaintiff finds objectionable (e.g., with each failure to pay dividends or failure to share records, etc.). The district court held that, not only was Whitney on inquiry notice of shareholder-rights claims prior to October 2007, but any subsequent denial of shareholder rights or shareholder status did not result in a newly accrued claim. As such, the July or August 2007 date controlled for statute-of-limitations purposes. In so holding, the district court expressly noted that Whitney had failed to present argument on the issue of ongoing claim accrual or the continuing-violation doctrine.

The court then conducted a choice-of-law analysis for the defendants' counterclaims, held Delaware law applied, and dismissed the counterclaims on statute-of-limitations grounds. Whitney appeals. The defendants do not appeal the grant of summary judgment on the counterclaims.

III.

We review a grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. Hitt v. Harsco Corp., 356 F.3d 920, 923–24 (8th Cir. 2004). Summary judgment is appropriate when there exist no genuine questions of material fact and the case can be decided as a matter of law. Fed. R. Civ. P. 56(c). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" Grage v. N. States Power Co.-Minn., 813 F.3d 1051, 1052 (8th Cir. 2015) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.2011) (en banc)).

On appeal, Whitney argues that he was a shareholder of the several companies and that the district court erred in holding otherwise. He also argues the district court erred in its statute-of-limitations analysis because he was not on inquiry notice prior to October 2007. As in the district court, he presents no arguments concerning tolling of the statute of limitations, ongoing claim accrual, or a potential continuing-violation theory.

Whitney's argument concerning his status as a shareholder is misplaced. The district court did not hold that he was or was not a shareholder of any corporations. Rather, the court held claims asserting such status were untimely because he was on inquiry notice of such claims in July or August 2007, yet he did not file suit until October 2010.

Whitney argues that the July 20, 2007 email and accompanying deposition testimony are inconclusive and leave open a triable question of fact as to whether he was on inquiry notice prior to October 2007. The email at issue stated:

John, We need to have a serious talk. I have absolutely NO idea what is going on at Agora. I have never seen financials. I have never seen a PENNY FROM THIS ENTITY. Where are the tax returns???? Where is the K-1? This is no way to run a business, I am feeling that you are screwing me out of my share. You might already have with this corporate mish mash. this is not fair to treat me like this. For all I know there is some tax liability that that I owe!!! It is time to come clean with your partner about your intentions. We SHOULD be making a LOT of mony. Are you taking it out???? Where is it if not . . . ? Whenever I ask any employee I get this stonewall, "talk to John". I have tried to nicely get info and you just put me off. Time and time again. I need answers I want to set a time next week to have this discussion. It's time to stop the BS and talk. . . . JOSEPH

As per Whitney's own deposition testimony, this email followed "months and months" of requests for records and applied to Whitney's purported interests in all of the various corporations. These undisputed facts, coupled with the fact that the absence of any response to the email caused him to consult with an attorney, show a reasonable jury could reach but one conclusion: Whitney was on inquiry notice no later than August 2007 that Morrison and the various corporations were not recognizing or honoring his purported shareholder rights.[2]

---

[2]Whitney's theory of the case in the alternative is that he and Morrison were partners and that Morrison breached a fiduciary duty by misappropriating corporate property. Partnership-related fiduciary claims, however, also have a three-year statute of limitations. Del. Code Ann. tit. 10, § 8106. And here, Whitney presented no evidence of misappropriation within the three-year limitations period, so the fiduciary duty claim is also barred. Finally, to the extent Whitney frames his claims as a demand for an accounting, we agree with the district court that accounting is a remedy, not an independent cause of action. Stevanov v. O'Connor, Civ. No. 3820, 2009 WL 1059640, at *15 (Del. Ch. Apr. 21, 2009) ("A claim for an accounting in the Court of Chancery generally reflects a request for a particular type of remedy, rather than an equitable claim in and of itself."); see also Cox v. Mortg. Elec. Registration Sys., Inc., 794 F. Supp. 2d 1060, 1065 (D. Minn. 2011) ("Moreover, this request for equitable relief is premised on defendants liability in counts II–V. Because those claims warrant dismissal, the claim for accounting also fails."), aff'd,

Whitney counters that documents and information he received as late as 2006 suggested he was a shareholder such that he could not have been on inquiry notice in July or August 2007. Whitney's argument fails in two regards. First, it would be surprising if a plaintiff asserting a shareholder-rights claim did not possess some evidence from an earlier point in time to support his theory of shareholder status. There is, therefore, nothing inconsistent about finding inquiry notice in August 2007 even if materials from 2006 otherwise suggested Whitney was a shareholder. More importantly, however, any such older statements, representations or evidence only create a triable question of fact as to inquiry notice if, on the whole, the resulting record would permit reasonable jurors to find in Whitney's favor. Torgerson, 643 F.3d at 1042. Here, nothing Whitney references from prior to 2007 shows a reasonable juror might fail to conclude Whitney was on inquiry notice of his potential shareholder-rights claims at least as of August 2007.

Whitney also argues that he had no notice from the defendants that they contested his shareholder status until 2011 when the defendants filed a memorandum in support of their motion to dismiss. In that memorandum, the defendants affirmatively asserted that funds Whitney earlier had contributed to the enterprise were loans rather than a shareholder's equity contribution. According to Whitney, the 2011 memorandum, rather than any statements or events from 2007, provided inquiry notice that the defendants did not consider him to be a shareholder.

Whitney miscontrues the nature of inquiry and actual notice. The 2011 memorandum served as an express repudiation of Whitney's purported shareholder status. Whitney offers no authority to support the proposition that an express and affirmative denial of such status is required to create inquiry notice. In fact it runs

_____

685 F.3d 663 (8th Cir. 2012). In the absence of a timely substantive claim, Whitney is not entitled to an accounting. See Jacobson v. Dryson Acceptance Corp., Civ. No. 17684, 2002 WL 75473, at *4 (Del. Ch. 2002) ("If [the plaintiff] has no enforceable right to stock, the action for an accounting will also fail.").

counter to the concept of inquiry notice to demand such a statement—a statement expressly repudiating a claim to shareholder status serves as actual notice rather than inquiry notice. Simply put, the failure or refusal to honor shareholder rights, when clearly known by the purported shareholder, suffices to create inquiry notice. See Eluv Holdings (BVI) Ltd. v. Dotomi, LLC, C.A. No. 6894-VCP, 2013 WL 1200273, at *10 (Del. Ch. Mar. 26, 2013) (finding a purported shareholder to be on inquiry notice when, after attempting to exercise stock purchase options, he received no documents and participated in no manner in the corporation, and stating, "Not receiving documents of this sort should have alerted a reasonable investor to the fact that [the corporation] did not consider [the plaintiff] a shareholder."). And, in general, an outstanding question of fact regarding whether a plaintiff was or was not a shareholder "does not create a genuine fact dispute about whether [the plaintiff] knew enough to put her on inquiry notice, and thus did not excuse her from making a reasonable inquiry to protect her rights." Egner v. Talbots, Inc., 214 P.3d 272, 280 (Alaska 2009). Here, as in Eluv and Egner, Whitney was on inquiry notice when he knew he was not being treated as a shareholder. A reasonable jury would be compelled to conclude that the July 20, 2007 email and the accompanying deposition testimony show such notice.

We affirm the judgment of the district court.[3]

_____

_____

[3]We deny as moot Whitney's pending motion to supplement the record.