**2023 IL 127801**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127801)

JOROME TIMS *et al.*, Appellees, v. BLACK HORSE CARRIERS, INC., Appellant.

*Opinion filed February 2, 2023.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, and Cunningham concurred in the judgment and opinion.

Justices Rochford and O'Brien took no part in the decision.

## OPINION

¶ 1      The plaintiff, Jorome Tims, filed a class-action lawsuit against the defendant, Black Horse Carriers, Inc. (Black Horse), his former employer, alleging that Black Horse violated (1) section 15(a) of the Biometric Information Privacy Act (Act) (740 ILCS 14/15(a) (West 2018)), providing for the retention and deletion of biometric information, and (2) section 15(b) and 15(d) of the Act, providing for the

consensual collection and disclosure of biometric identifiers and biometric information, when it scanned the plaintiff's fingerprints (*id.* § 15(b), (d)).

¶ 2        Black Horse moved to dismiss the complaint as untimely filed pursuant to section 13-201 of the Code of Civil Procedure (Code) (735 ILCS 5/13-201 (West 2018)). The Cook County circuit court denied the motion, holding that the plaintiff's complaint was timely filed because the five-year limitations period codified in section 13-205 of the Code (*id.* § 13-201) applied to violations of the Act. Tims subsequently amended his complaint to name Isaac Watson as an additional plaintiff and class representative.

¶ 3        Black Horse filed a motion to reconsider the circuit court's denial of its motion to dismiss and moved to certify, for immediate appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), the question of which limitations period controlled claims under the Act. The circuit court denied the motion to reconsider but certified the question so an application for leave to appeal could be filed in the appellate court.

¶ 4        The appellate court allowed the interlocutory appeal and answered the certified question, holding that the one-year limitations period codified in section 13-201 of the Code governs actions under section 15(c) and 15(d) of the Act and that the five-year limitations period codified in section 13-205 of the Code governs actions under section 15(a), 15(b), and 15(e) of the Act. 2021 IL App (1st) 200563, ¶ 33. It then remanded the cause to the circuit court for further proceedings. *Id.* ¶ 35.

¶ 5        We allowed, pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021), Black Horse's petition for leave to appeal. We also allowed the Illinois Chamber of Commerce, the Illinois Trial Lawyers Association, the National Employment Lawyers Association/Illinois, and the Employment Law Clinic to file *amicus curiae* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the following reasons, we find that the five-year limitations period contained in section 13-205 of the Code governs claims under the Act. Therefore, we affirm in part and reverse in part the judgment of the appellate court and remand the cause to the circuit court for further proceedings.

¶ 6                                    I. BACKGROUND

¶ 7        Tims filed a class-action complaint against his former employer, Black Horse, alleging that Black Horse violated (1) section 15(a) of the Act (740 ILCS 14/15(a) (West 2018)), providing for the retention and deletion of biometric information, and (2) section 15(b) and 15(d) of the Act, providing for the consensual collection and disclosure of biometric identifiers and biometric information when it scanned the plaintiff's fingerprints. *Id.* § 15(b), (d). Specifically, the complaint alleged that Black Horse required its employees to use a fingerprint authentication time clock. Tims claimed that Black Horse violated the Act because it (1) failed to institute, maintain, and adhere to a publicly available biometric information retention and destruction policy required under section 15(a); (2) failed to provide notice and to obtain his consent when collecting his biometrics, in violation of section 15(b); and (3) disclosed or otherwise disseminated his biometric information to third parties without consent in violation of section 15(d). *Id.* § 15(a), (b), (d).

¶ 8        Black Horse moved to dismiss the complaint as untimely, arguing that it was barred by the one-year statute of limitations in section 13-201 of the Code (735 ILCS 5/13-201 (West 2018)). According to Black Horse, claims brought under the Act concern violations of privacy, and therefore, the one-year limitations period in section 13-201 of the Code should apply to such claims under the Act because section 13-201 governs actions for the "publication of matter violating the right of privacy." *Id.*

¶ 9        Tims maintained that, although the Act is a privacy statute, the five-year catchall limitations period codified in section 13-205 of the Code should apply to claims under the Act. According to Tims, the one-year limitations period applies to privacy claims where "publication" is an element of the cause of action. Because claims under the Act do not involve the publication of biometric data, nor was the Act intended "to regulate the publication of biometric data," the one-year limitations period should not apply.

¶ 10       The circuit court denied Black Horse's motion to dismiss, holding that the one-year limitations period in section 13-201 did not apply. In so doing, the court reasoned that, because Tims alleged that Black Horse violated the Act and did not allege Black Horse invaded Tims's privacy or defamed him, applying the one-year

limitations period is inappropriate. It also reasoned that the five-year limitations period applied because the Act itself does not contain a limitations period.

¶ 11 Tims subsequently amended his complaint to name Isaac Watson as an additional plaintiff and class representative. Both plaintiffs asserted the same claims with the only factual difference being the dates each plaintiff was employed by Black Horse.

¶ 12 Black Horse answered the amended complaint, filed a motion to reconsider the denial of its motion to dismiss, and moved to certify, for immediate appeal pursuant to Rule 308, the question of which limitations period controlled. According to Black Horse, the nature of the claim—not the facts or the elements of the complaint—determines which limitations period controls. Black Horse asserts that, because the nature of the claims under the Act involves the publication of matter violating a privacy right, section 13-201 of the Code should control.

¶ 13 The circuit court denied the motion to reconsider and certified the following question to the appellate court: "[w]hether the limitations periods set forth in 735 ILCS 5/13-201 ('Defamation—Privacy') or 735 ILCS 5/13-205 apply to claims brought under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*"

¶ 14 The appellate court answered the certified question, holding that a cause of action under the Act is governed by two statutes of limitations—the one-year limitations period pursuant to section 13-201 of the Code and the five-year limitations period pursuant to section 13-205 of the Code. 2021 IL App (1st) 200563, ¶¶ 33, 35. Specifically, the court reasoned that the one-year limitations period codified in section 13-201 of the Code applies to claims based on section 15(c) and 15(d) of the Act where "publication or disclosure of biometric data is clearly an element" of the claim. *Id.* ¶ 32. The appellate court also held that the five-year limitations period codified in section 13-205 of the Code applies to section 15(a), 15(b), and 15(e) of the Act because "no element of publication or dissemination" exists in those claims. *Id.* ¶ 31. We allowed Black Horse's petition for leave to appeal.

¶ 15                                II. ANALYSIS

¶ 16        On appeal, Black Horse maintains that the Act is a privacy statute and should
be governed by the one-year limitations period codified in section 13-201 of the
Code, as that limitations period applies to violations of privacy rights. The plaintiffs
cross-appeal, asserting that, while the Act is a privacy statute, the five-year catchall
limitations period, codified in section 13-205 of the Code, should apply to claims
under the Act. Both parties agree that the appellate court erred in applying two
different limitations periods to the Act and ask this court to apply either the one-
year limitations period or the five-year limitations period to the entire Act. We
agree with the parties that the appellate court erred in applying two different statutes
of limitations to the Act. See *Sundance Homes, Inc. v. County of Du Page*, 195 Ill.
2d 257, 266 (2001); see also *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13.


¶ 17                              A. Standard of Review

¶ 18        This court is tasked with determining which limitations period controls claims
under the Act—the one-year limitations period codified in section 13-201 of the
Code or the five-year limitations period codified in section 13-205 of the Code.
Resolving this issue involves a question of law and requires us to construe multiple
provisions of the Act; therefore, since statutory construction of a statute presents a
question of law, our review is *de novo*. *Board of Education of Chicago v. Moore*,
2021 IL 125785, ¶ 18 (statutory construction of a statute presents a question of law);
*Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. Moreover, in our
determination of the applicability of a limitations period to a cause of action, we
must focus our inquiry on the nature of the liability. *Armstrong v. Guigler*, 174 Ill.
2d 281, 291 (1996).


¶ 19                B. One Limitations Period Should Govern the Act

¶ 20        One of the purposes of a limitations period is to reduce uncertainty and create
finality and predictability in the administration of justice. See *Sundance Homes*,
195 Ill. 2d at 266 (holding "[s]tatutes of limitation and repose represent society's
recognition that predictability and finality are desirable, even indispensable,
elements of the orderly administration of justice"); see also Tyler T. Ochoa &

- 5 -

Andrew J. Wistrich, *The Puzzling Purposes of Statutes of Limitation*, 28 Pac. L.J. 453 (1997) (asserting that statutes of limitations historically have many purposes, including the reduction of uncertainty). The appellate court's decision to invoke two different statutes of limitations to different subsections of section 15 of the Act does not align with this purpose. Two limitations periods could confuse future litigants about when claims are time-barred, particularly when the same facts could support causes of action under more than one subsection of section 15. For example, a plaintiff could have a cause of action under section 15(a) (740 ILCS 14/15(a) (West 2018) (failing to publicize a written policy regarding its collection of biometric information)), which would have a five-year limitations period under the appellate court's analysis, and subsection (c) (*id.* § 15(c) (prohibiting an entity's ability to sell or profit from a person's biometrics)), which would have a one-year limitations period under the appellate court's analysis.

¶ 21    We find our decision in *Sundance Homes*, 195 Ill. 2d 257, instructive to our analysis of the case under review. In *Sundance Homes*, this court was tasked with determining whether tax refund claims would be governed by both the equitable doctrine of *laches* and the five-year catchall limitations period for civil cases. *Id.* at 265. We held that the five-year catchall limitations period applied—rejecting the bifurcation of tax refund claims into law and equity. *Id.* at 284. In so doing, we reasoned that "the legislature intended that a uniform and harmonious system of law apply to refund cases, and the maintenance of two time-bar standards for simple refund cases is inconsistent with that intent." *Id.* Relying on the reasoning in *Sundance Homes*, we find that applying two different limitations periods or time-bar standards to different subsections of section 15 of the Act would create an unclear, inconvenient, inconsistent, and potentially unworkable regime as it pertains to the administration of justice for claims under the Act.

¶ 22    Because statutes should be interpreted with the presumption that the legislature "did not intend absurd, inconvenient, or unjust consequences" when enacting the statute, we will not apply two different statutes of limitations to the Act. *In re Marriage of Goesel*, 2017 IL 122046 ¶ 13; *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 282 (2006).

¶ 23                    C. Interpreting Language in Section 15 of the Act

¶ 24          We reiterate that Black Horse urges this court to apply the one-year limitations period codified in section 13-201 of the Code to claims under section 15 of the Act. Section 13-201 of the Code provides that "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201 (West 2018). According to Black Horse, the nature of claims under section 15 of the Act is privacy violation, and section 13-201 governs claims asserting a violation of privacy rights. The plaintiffs argue, *inter alia*, that the five-year "catchall" limitations period in section 13-205 of the Code should apply to violations under section 15 of the Act. Section 13-205 of the Code provides, in pertinent part, "actions on unwritten contracts, expressed or implied, *** and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." *Id.* § 13-205. The plaintiffs assert that the five-year limitations period applies where the statute itself does not contain its own limitations period. We agree with the plaintiffs.

¶ 25          To determine which limitations period should apply to all subsections of section 15, we begin by analyzing the Act. This requires us to employ established principles of statutory construction.

¶ 26          The cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20; *Kunkel v. Walton*, 179 Ill. 2d 519, 533 (1997). The most reliable indicator of legislative intent is found in the statutory language, given its plain and ordinary meaning. *People v. McChriston*, 2014 IL 115310, ¶ 15. When the statute contains undefined terms, we may use the aid of a dictionary to ascertain the plain and ordinary meaning of those terms. *Id.*

¶ 27          The Act was enacted to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2018). The Act defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* It is undisputed

that the fingerprint data collected by Black Horse from plaintiffs and the class represented by the complaint constituted biometric identifiers subject to regulation by the Act's provisions and that the electronically stored version of the fingerprint data constituted biometric information within the meaning of the Act.

¶ 28 Section 15 of the Act imposes on private entities such as Black Horse various obligations with which they are required to comply regarding the collection, retention, disclosure, and destruction of biometric identifiers and biometric information. We recognize that the plaintiffs alleged violations under section 15(a), 15(b), and 15(d) of the Act; however, we will consider all five subsections in section 15 to ascertain which limitations period applies. Section 15 of the Act provides as follows:

"§ 15. Retention; collection; disclosure; destruction.

(a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

(c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

(e) A private entity in possession of a biometric identifier or biometric information shall:

(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

(2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id.* § 15.

¶ 29    Based on the plain language of the Act, all five subsections of section 15 of the Act prescribe rules to regulate the collection, retention, disclosure, and destruction of biometric identifiers and biometric information. See *id.*; see also *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 20. Section 15(a) regulates the establishment, maintenance, and adherence to a retention schedule and guidelines for destroying collected biometric information. 740 ILCS 14/15(a) (West 2018). Section 15(b) regulates and requires entities to provide notice and obtain written consent before collecting or storing biometric information. *Id.* § 15(b). Section 15(c) regulates and prohibits the selling or otherwise profiting from collected biometric information. *Id.* § 15(c). Section 15(d) regulates the disclosure or dissemination of biometric information without consent. *Id.* § 15(d). Section 15(e) regulates the proper storage and protection of collected biometric information. *Id.* § 15(e).

¶ 30    The appellate court found that section 15(a), 15(b), and 15(e) of the Act contain no words that could be defined as involving publication. 2021 IL App (1st) 200563, ¶ 31. Therefore, the court determined that these three subsections would not come within the purview of the one-year limitations period in section 13-201 of the Code as "publication of matter" violating a privacy right. *Id.* We also find no words that could be defined as involving "publication," nor could an inference of publication be drawn from any of the words in those subsections. Therefore, subsections (a), (b), and (e) are subject to the five-year catchall limitations period codified in section 13-205 of the Code.

¶ 31    We note that the appellate court also found that section 15(c) and 15(d) of the Act, which contain the words "sell," "lease," "trade," "disclose," redisclose," and "disseminate," could be defined as involving publication and would fall within the purview of the one-year limitation period in section 13-201 of the Code as "publication of matter" violating a privacy right. *Id.* ¶¶ 32-33.

¶ 32    Based on this court's definition of "publication" in *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, we agree that an argument can be made that the words "sell," "lease," "trade," "disclose," "redisclose," and "disseminate" in subsections (c) and (d) could be defined as involving publication. 2021 IL 125978, ¶ 43 (finding that publication contains more than one meaning—communication of information to the general public or communication of information to one person).

Therefore, we acknowledge that the one-year statute of limitations could be applied to subsections (c) and (d). However, when we consider not just the plain language of section 15 but also the intent of the legislature, the purposes to be achieved by the statute, and the fact that there is no limitations period in the Act, we find that it would be best to apply the five-year catchall limitations period codified in section 13-205 of the Code. *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 17; *United States v. Glispie*, 2020 IL 125483, ¶ 10. This would also further our goal of ensuring certainty and predictability in the administration of limitations periods that apply to causes of actions under the Act. *Sundance Homes*, 195 Ill. 2d at 284.

¶ 33
        D. The Five-Year Limitations Period in Section 13-205
            of the Code Applies to the Act Because the
            Act Does Not Contain a Limitations Period

¶ 34    Again, section 13-205 of the Code provides that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2018). Illinois courts have routinely applied this five-year catchall limitations period to other statutes lacking a specific limitations period. For example, in *Sundance Homes*, the plaintiff sought a refund of certain fees it paid under a county ordinance it challenged as unconstitutional. 195 Ill. 2d at 260. In determining which limitations period applied, this court held:

> "We believe the legislature intended that a uniform and harmonious system of law apply to refund cases, and the maintenance of two time-bar standards for simple refund cases is inconsistent with that intent. Therefore, subject to the special limitation period applicable to the limited refund action allowed in section 5-916 of the Road Improvement Impact Fee Law (605 ILCS 5/5-916 (West 1998)), the five-year statute of limitation set forth in section 13-205 of the Code of Civil Procedure applies to refund actions in which the claimants essentially seek nothing more than a return of money." *Id.* at 284.

¶ 35    Also, in *Seaman v. Thompson Electronics Co.*, 325 Ill. App. 3d 560, 565 (2001), the plaintiffs filed a suit against Thompson Electronics Company claiming damages for lost wages under the Prevailing Wage Act (Wage Act) (820 ILCS 130/0.01 *et seq.* (West 2000)). The Wage Act did not contain an applicable limitations period for filing claims, and our appellate court was tasked with determining which

limitations period applied to claims under the Wage Act. *Seaman*, 325 Ill. App. 3d at 561-62. Our appellate court held that "[a] suit under the [Wage] Act qualifies as an action 'not otherwise provided for' because the [Wage] Act is silent regarding a limitations period." *Id.* at 565.

¶ 36   Similarly, in *People ex rel. Illinois Department of Labor v. Tri State Tours, Inc.*, 342 Ill. App. 3d 842, 848 (2003), the plaintiff filed a complaint pursuant to the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2000)), seeking accrued vacation pay on behalf of a former employee of the defendants. The complaint was dismissed with prejudice as untimely filed. The plaintiff appealed from that dismissal. Our appellate court held, "[b]ecause the [Wage Payment and Collection] Act does not provide for a statute of limitations, the five year 'catch-all' limitations period found in section 13-205 is applicable to actions brought under the [Wage Payment and Collection] Act." *Tri State Tours, Inc.*, 342 Ill. App. 3d at 848.

¶ 37   Applying the same reasoning in the aforementioned cases to the case on review, we find that, because the Act does not have its own limitations period; because the subsections are causes of action "not otherwise provided for"; and because we must ensure certainty, predictability, and uniformity as to when the limitations period expires in each subsection, the Act is subject to the default five-year limitations period found in section 13-205 of the Code. See *Sundance Homes*, 195 Ill. 2d at 284; *Seaman,* 325 Ill. App. 3d at 565; *Tri State Tours, Inc.*, 342 Ill. App. 3d at 848.

¶ 38                    E. The General Assembly's Policy Concerns Are Accomplished
                            by Applying a Longer Limitations Period

¶ 39   In section 5 of the Act, the General Assembly provided a thorough list of goals it intended to accomplish as well as the ills it intended to ameliorate with the enactment of this statute—among them being securing "[t]he public welfare, security, and safety" of the public by "regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2018). The General Assembly found that "[a]n overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information." *Id.* § 5(d). It also noted that "[t]he full ramifications of biometric

technology are not fully known" (*id.* § 5(f)) and that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. *** Biometrics *** are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions" (*id.* § 5(c)). See also *Rosenbach*, 2019 IL 123186, ¶ 35. In light of the extensive consideration the General Assembly gave to the fears of and risks to the public surrounding the disclosure of highly sensitive biometric information, it would thwart legislative intent to (1) shorten the amount of time an aggrieved party would have to seek redress for a private entity's noncompliance with the Act and (2) shorten the amount of time a private entity would be held liable for noncompliance with the Act.

¶ 40        Further, we note that the defamation torts (libel and slander), which fall under section 13-201 of the Code, are subject to a short limitations period because aggrieved individuals are expected to quickly become apprised of the injury and act just as quickly when their reputation has been publicly compromised. See *Meyer Land & Cattle Co. v. Lincoln County Conservation District*, 31 P.3d 970 (Kan. Ct. App. 2001). In contrast, the full ramifications of the harms associated with biometric technology is unknown (see 740 ILCS 14/5(f) (West 2018)), and absent the Act's protections, it is unclear when or if an individual would discover evidence of the disclosure of his or her biometrics in violation of the Act. Moreover, a shorter limitations period would prejudice those whom the Act is intended to protect. Therefore, we find that a longer limitations period would comport with the public welfare and safety aims of the General Assembly by allowing an aggrieved party sufficient time to discover the violation and take action. See *id.* § 5(g).

¶ 41                                III. CONCLUSION

¶ 42        For the aforementioned reasons, we find that the five-year limitations period contained in section 13-205 of the Code controls claims under the Act. Therefore, we affirm in part and reverse in part the judgment of the appellate court and remand the cause to the circuit court for further proceedings.

¶ 43        Appellate court judgment affirmed in part and reversed in part.

¶ 44        Certified question answered.

¶ 45        Cause remanded.

¶ 46        JUSTICES ROCHFORD and O'BRIEN took no part in the consideration or decision of this case.