2023 IL App (4th) 220668

NO. 4-22-0668

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 1, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BARBARA A. THOMPSON and KATHLEEN JO WHALEN, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | McDonough County |
| v. | ) | No. 21LL13 |
| BERNARD F. WHALEN, THE ESTATE OF | ) | |
| PATRICK T. WHALEN, and YETTER | ) | Honorable |
| MANUFACTURING COMPANY, | ) | Raymond A. Cavanaugh, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment.

**OPINION**

¶ 1        In September 2021, plaintiffs, Barbara A. Thompson and Kathleen J. Whalen, filed suit asserting multiple counts against defendants over ownership of shares in Yetter Manufacturing Company (Yetter Manufacturing), a nonpublic corporation. Specifically, plaintiffs asserted a claim of "shareholder remedies" under section 12.56 of the Business Corporation Act of 1983 (Business Corporation Act) (805 ILCS 5/12.56 (West 2020)) against Yetter Manufacturing, conversion of corporate stock against Patrick Whalen's estate and Bernard Whalen, and civil conspiracy against all defendants.

¶ 2        Defendants countered with motions to dismiss under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). The crux of defendants' motions was that plaintiffs' claims were barred as untimely filed.

¶ 3    The trial court denied defendants' motions but, on its own motion, certified the following questions to this court for interlocutory review under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

"a. What is the statute of limitations for claims of denial of shareholder status or oppression of shareholder interests under Section 12.56 of the [Business Corporation Act], as amended?

b. When does a claim for the denial of shareholder status or oppression of shareholder interests under Section 12.56 of the [Business Corporation Act] accrue for purposes of triggering the statute of limitations? and

c. When does a claim for the conversion of corporate stock accrue for purposes of triggering the statute of limitations under 735 ILCS 5/13-205?"

¶ 4    We answer two of the certified questions *infra* and remand for further proceedings.

¶ 5                                I. BACKGROUND

¶ 6    The "facts" that serve as the background for this appeal originate in the complaint and its attachments. As of the certification of the above questions, no answer had been filed.

¶ 7    Harry G. Yetter and Etta Yetter, the maternal grandparents of the parties, founded Yetter Manufacturing in 1955. Fourteen hundred shares of stock in Yetter Manufacturing were issued. In this suit, 529 shares are involved. We note defendants in their appellant brief indicate the number of shares may be 519.

¶ 8    Harry died in 1975, bequeathing 529 shares of Yetter Manufacturing to his son,

Gaylord Yetter. Harry left to his daughter, Joan Whalen, the mother of the parties, a vested remainder therein. In March 1980, Joan died testate. She predeceased Gaylord and their brother, Lloyd Yetter. Lloyd, in November 1989, informed the defendants they should distribute the 529 shares equally among Joan's five children. These children include the two plaintiffs, as well as defendant Bernard and Patrick, whose estate is a defendant in this lawsuit. A third sister, Susan Nichols, is not a party.

¶ 9          In 1990, because plaintiffs claimed an interest in those 529 shares, Patrick and Bernard brought a declaratory action against plaintiffs and Nichols. Patrick and Bernard asserted they were the owners of those 529 shares. They based this assertion on the terms of Joan's will, which is attached to the complaint. Unfortunately, the writing on Joan's will that supports Patrick and Bernard's assertion appears to have been highlighted in the original, making the electronic version unreadable. Due to the allegations in the action for declaratory judgment and the part of Joan's will that is discernible, it seems Joan left Patrick and Bernard the right to purchase her "stock interest." The part of the will that was not highlighted reads as follows, in part: "My executor shall give notice of said right to buy to my sons within 14 days after his appointment to office and my son or sons, as the case may be, shall have 30 days from receiving said notice to accept in writing this option to purchase said stock interest and creditor's claims."

¶ 10          In the declaratory-judgment action, the parties, which included the three sisters, moved for summary judgment. The trial court granted the summary-judgment motion to the sisters and denied Patrick and Bernard's motion based on the following:

> "Contrary to the Plaintiff's position[,] I find no ambiguity
> in the will and four codicils of Harry Yetter as they [affect] the
> rights of these parties to the shares in question. The will and the

codicils created insofar as we are now concerned, a vested remainder in Joan Whalen, which remainder was divested by her failure to survive the life tenant Gaylord Yetter. Her bequest of the right to purchase these shares to the Plaintiffs and their decision to purchase, was likewise subject to the same possibility of divestiture and when Joan died before Gaylord, divestiture occurred. Therefore, Bernard and Patrick Whalen lost the benefit of the purchase of her remainder interest in these shares upon her premature demise."

¶ 11    In their complaint, plaintiffs asserted, since the January 1992 ruling, defendants refused to acknowledge their interests in the 529 shares. No stock certificates were given to plaintiffs. No notices of shareholder meetings or votes were provided to plaintiffs. Plaintiffs had not received any financial benefits from those shares. Plaintiffs maintained they requested financial statements from Yetter Manufacturing multiple times in 1992 and defendants refused to provide that information. Plaintiffs asserted they "were at all relevant times stated herein, and still are, shareholders of [Yetter Manufacturing]." Plaintiffs maintained the directors of other shareholders acted in a manner that was oppressive, illegal, and fraudulent toward plaintiffs. Among the conduct plaintiffs challenged were Yetter Manufacturing's failure to (1) distribute profits to shareholders in a timely manner, (2) allocate profits among its shareholders from 1987 to the present, (3) make corporate records available from 1987 to the present, (4) exercise reasonable care in the management of Yetter Manufacturing, and (5) notify plaintiffs of meetings. Plaintiffs also alleged Yetter Manufacturing denied plaintiffs' shareholder interest and, as a result, they have been oppressed. Plaintiffs seek a full accounting, a custodian to manage the

-4-

business and affairs of Yetter Manufacturing, compensatory damages, litigation costs, and other just and equitable relief.

¶ 12    In their section 2-619(a) motions to dismiss (735 ILCS 5/2-619(a) (West 2020)), defendants argued plaintiffs' claims are barred by the five-year statute of limitations under section 13-205 of the Code of Civil Procedure (*id.* § 13-205 (West 2020)). Defendants pointed to the allegations in the complaint showing plaintiffs knew of these alleged claims by 1992. Plaintiffs countered by arguing the general five-year statute of limitations of section 13-205 does not apply to claims brought under section 12.56 (805 ILCS 5/12.56 (West 2020)).

¶ 13    At the hearing on defendants' motions, the court denied the motions, finding the claims not time-barred. The court stressed, "the events that are being alleged to have occurred that were the triggering [event] were the 2018 event where the stockholders were left out of the ownership materials."

¶ 14    In July 2022, the trial court entered a written order. In its order, the court observed the parties agreed a five-year statute of limitations applied to actions for conversion of corporate stock. The court summarized plaintiffs' argument regarding conversion as it "would not accrue until the Defendant expressly claimed ownership of Plaintiff's corporate stock." The court stated it found no binding precedent on whether the section 13-205 statute of limitations applied to section 12.56 actions and for when a claim for conversion accrued for limitations purposes. The court identified two "written orders" under Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021) that reached different results as to the applicable statute of limitations for section 12.56 actions: *Vizcarra v. LMR Home Healthcare, Inc.*, 2019 IL App (3d) 170713-U, and *Burke v. McKernan*, 2020 IL App (1st) 190318-U. The court found material questions of law on the aforementioned issues and determined substantial grounds for difference of opinion regarding these matters

existed. The court, on its own motion, certified the above questions for appeal.

¶ 15 In September 2022, this court allowed the application for leave to appeal under Rule 308.

¶ 16 II. ANALYSIS

¶ 17 A. Rule 308

¶ 18 Rule 308 provides a means for parties to obtain interlocutory review of an order not otherwise appealable. See Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019). To obtain relief under Rule 308, the order involved must involve "a question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* When an interlocutory appeal is brought under Rule 308, our review is limited to the certified question or questions presented. *Spears v. Ass'n of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289, ¶ 15, 986 N.E.2d 216. Only if the certified question presents a question of law will this court answer that question. *Id.* When the ultimate resolution of the question turns on the resolution of factual predicates, we will not answer it. See *id.*

¶ 19 B. Question A

¶ 20 The first question certified to the court is the following: "What is the statute of limitations for claims of denial of shareholder status or oppression of shareholder interests under Section 12.56 of the [Business Corporation Act], as amended?"

¶ 21 Plaintiffs assert, under section 12.56, an oppression-of-shareholder-interests claim is timely when said claim is initiated by a *shareholder* in the corporation. According to plaintiffs, no matter the circumstances of the oppression or when the oppression began, there is no claim by a shareholder of that corporation for oppression under section 12.56 that is untimely. Plaintiffs

further contend, under section 12.80 of the Business Corporation Act (805 ILCS 5/12.80 (West 2020)), shareholder claims of oppression even extend to five years after the corporation's dissolution. In support, plaintiffs rely on two cases: *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill. 2d 208, 220 (1960), and *Vizcarra*,.

¶ 22        Defendants counter, as there is no statute-of-limitations period provided for in section 12.56 or otherwise in the Business Corporation Act, the catchall five-year statute of limitations found in section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 2020)) applies. Defendants emphasize the Business Corporation Act expressly provides the practice in an action under section 12.56 "shall be the same as in other civil actions except as may be otherwise provided in this Act" (805 ILCS 5/12.60(a) (West 2020)) and section 13-205 is found in the Code of Civil Procedure. Defendants argue plaintiffs' position of an unlimited limitations period "completely fl[ies] in the face of the purpose of the statute of limitations" to avoid stale litigation. See generally *Milnes Plumbing v. Hunt*, 311 Ill. App. 3d 977, 981, 725 N.E.2d 779, 782 (2000) ("Statutes of limitations are designed to prevent recovery on stale demands," providing "an opportunity to investigate factors upon which liability is based while the evidence is still discoverable.").

¶ 23        We note both parties cite competing written orders, as opposed to opinions, on the applicable statute of limitations from the First and Third Districts of the Illinois Appellate Court: *Vizcarra* and *Burke*. While we acknowledge the trial court pointed to these cases as evidencing the absence of a conclusive decision on the matter of what limitations period applies, the parties' reliance on these cases in this appeal as persuasive authority is prohibited by supreme court rule. Specifically, Rule 23 bars a party's use of written orders under Rule 23(b) for persuasive or precedential purposes unless they fall within those cases identified in section (e)(1) of Rule 23:

"An order entered under subpart (b) or (c) of this rule is not

precedential except to support contentions of double jeopardy,

*res judicata*, collateral estoppel, or law of the case. However, a

nonprecedential order entered under subpart (b) of this rule on or

after January 1, 2021, may be cited for persuasive purposes." Ill. S.

Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

As both cases precede January 1, 2021, the parties were not authorized to cite them for

persuasive or precedential purposes. We will not, therefore, consider their analyses or

conclusions to answer the certified questions presented in this appeal.

¶ 24    The resolution of the question as to the applicable statute of limitations turns on

the terms of statutory provisions of the Code of Civil Procedure and Business Corporation Act.

In matters of statutory interpretation, our review is *de novo*. *Marsh v. Sandstone North, LLC*,

2020 IL App (4th) 190314, ¶ 63, 179 N.E.3d 402. When tasked with interpreting a statute, our

main goal is to ascertain and give effect to legislative intent. *Id.* The most reliable indicator of

that intent is the statute's language, to which we give its plain and ordinary meaning. *Id.* (citing

*Van Dyke v. White*, 2019 IL 121452, ¶ 46, 131 N.E.3d 511). When the language of the statute is

clear and unambiguous, we must give the statute the effect as written and not resort to other aids

of statutory construction. *Thomann v. Department of State Police*, 2016 IL App (4th) 150936,

¶ 25, 66 N.E.3d 834.

¶ 25    Section 13-205, oft referred to as a "catchall limitations period" (see, *e.g.*, *Tims v.*

*Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 21) provides the following:

"Except as provided in Section 2-725 of the 'Uniform Commercial

Code' [(810 ILCS 5/2-725 (West 2018))], approved July 31, 1961,

-8-

as amended, and Section 11-13 of 'The Illinois Public Aid

Code'[(305 ILCS 5/11-13 (West 2018))], approved April 11, 1967,

as amended, actions on unwritten contracts, expressed or implied,

or on awards of arbitration, or to recover damages for an injury

done to property, real or personal, or to recover the possession of

personal property or damages for the detention or conversion

thereof, and all civil actions not otherwise provided for, shall be

commenced within 5 years next after the cause of action accrued."

735 ILCS 5/13-205 (West 2020).

The language of section 13-205 plainly does not expressly exclude actions under the Business Corporation Act.

¶ 26    Three Business Corporation Act provisions relied on by the parties are section 12.56, section 12.60, and section 12.80. Section 12.56 is the basis for plaintiffs' shareholder-remedies claim. It is lengthy, but the relevant portion of that section states the following:

"(a) In an action by a shareholder in a corporation that has no shares listed on a national securities exchange ***, the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that:

* * *

(3) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a

shareholder, director, or officer[.]" 805 ILCS 5/12.56(a)(3)

(West 2020).

No language within section 12.56 sets a limitations period for claims brought under its provisions.

¶ 27    Section 12.60(a), relied upon by defendants, provides, "[t]he practice in actions under Section[ ] *** 12.56 shall be the same as in other civil actions except as may be otherwise provided in this Act." *Id.* § 12.60(a). Section 12.80 states the following, in part:

> "The dissolution of a corporation *** shall not take away nor impair any
>
> civil remedy available to or against such corporation, its directors, or
>
> shareholders, for any right or claim existing *** either prior to, at the time
>
> of, or after such dissolution if action or other proceeding thereon is
>
> commenced within five years after the date of such dissolution." *Id.*
>
> § 12.80.

The last sentence further states, "This provision does not extend any applicable statute of limitations." *Id.*

¶ 28    The plain and ordinary meaning of the words in the statutory provisions reveal the legislature intended the catchall provision of section 13-205 of the Code of Civil Procedure to apply to claims filed under section 12.56 of the Business Corporation Act. Section 12.60(a) indicates section 12.56 claims are civil actions to which the civil practice rules apply. *Id.* § 12.60(a). No other provision creating a different statute of limitations is identified by the parties. While plaintiffs stress specific statutory provisions control over general ones (see *LLC 1 05333303020 v. Gil*, 2020 IL App (1st) 191225, ¶ 23, 186 N.E.3d 904), plaintiffs have provided no specific statutory provision that renders section 13-205's catchall limitations period

inapplicable. Plaintiffs, by arguing sections 12.56 and 12.80 permit shareholders to bring such action until five years after the dissolution of the corporation, appear to confuse the issue of when a statute of limitations accrues and expires with the issue of which statute of limitations, if any, applies.

¶ 29     We further find plaintiffs' reliance on *Gidwitz* is misplaced. Plaintiffs contend *Gidwitz* establishes an oppressed shareholder may seek a judicial remedy at any time while the oppression continues. See *Gidwitz*, 20 Ill. 2d at 220. *Gidwitz*, however, is not a statute-of-limitations case. Facts relevant to a statute-of-limitations claim are therefore underdeveloped. See, *e.g.*, *id.* at 210 (not specifying the date on which the suit was filed). Moreover, the language emphasized by plaintiff, "when oppression is positively shown, the oppressed are entitled to the protection of law," does not follow a limitations argument but the statement, "Corporate dissolution is a drastic remedy that must not be lightly invoked." *Id.* at 220-21. *Gidwitz* does not support plaintiffs' position there is no statute of limitations for claims of shareholder oppression.

¶ 30                                C. Question B

¶ 31     The second certified question to this court is as follows: "When does a claim for the denial of shareholder status or oppression of shareholder interests under Section 12.56 of the [Business Corporation Act] accrue for purposes of triggering the statute of limitations?"

¶ 32     Plaintiffs proposes the following answer:

> "A claim for denial of shareholder status cannot begin to
> accrue prior to the date shares owned by the shareholder are
> actually taken from the shareholder, and any applicable statute of
> limitations would begin to run only after (1) the shareholder's

shares were voided and/or reissued to another, and (2) the injured

party knows, or reasonably should have known, their shares in the

corporation were no longer in their possession and knows or

reasonably should know to inquire further."

Plaintiffs thus assert, before a claim under section 12.56 may accrue, there must have been some

action to divest them of their shares. In addition, they maintain, each time a violation occurs,

there is a separate cause of action for violation of the statute. Plaintiffs' only authority in support

of this claim is *One Fish Two Fish*, *LLC v. Struif*, 2021 IL App (1st) 191441, ¶¶ 47-48, which

plaintiffs rely upon to show the fact a shareholder did not receive distributions did not, as a

matter of law, mean the shareholder was divested of her ownership interest.

¶ 33          In the alternative, defendants propose the answer is as follows:

"[T]he statute of limitations begins to accrue under Section

12.56 of the [Business Corporation Act] when the shareholder has

enough information to alert the shareholder that his or her

shareholder interests or rights are not being recognized or state

alternatively, when the shareholder reasonably should know that

his or her shareholder interests or rights are not being recognized."

Defendants cite the written order *Burke*, which we referenced above and found we would not

consider as such consideration was not authorized by Rule 23. Defendants further cite decisions

from other jurisdictions in which alleged-shareholder claims were deemed untimely on summary

judgment as those plaintiffs were on "inquiry notice" their status as shareholders was not

recognized. See *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1078 (8th Cir. 2016) ("Simply put, the

failure or refusal to honor shareholder rights, when clearly known by the purported shareholder,

suffices to create inquiry notice."); *Egner v. Talbot's, Inc.*, 214 P.3d 272, 280-82 (Alaska 2009); *Eluv Holdings (BVI) Ltd. v. Dotomi, LLC*, No. 6897-VCP, 2013 WL 1200273, at *7, 10, 13 (Del. Ch. Mar. 26, 2013).

¶ 34    As we found above, a five-year statute of limitations applies to claims under section 12.56. The strict application of a statute of limitations can, at times, result in a harsh result when the injury or wrongdoing was later discovered. In certain circumstances, to avoid such harsh results, Illinois courts have applied the discovery rule. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 21, 120 N.E.3d 982. Under this rule, the start of the limitations period is delayed until the claimant knew or reasonably should have known of the injury and the injury was caused wrongfully. *Id.* When an "injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved," it is at that point "the running of the limitations period commences." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81 (1982).

¶ 35    Defendants contend, and we agree, the discovery rule applies to claims of a denial of shareholder status and shareholder oppression. We find persuasive the authorities relied upon by defendants that have applied the discovery rule to shareholder disputes. See *Whitney*, 826 F.3d at 1078; *Egner*, 214 P.3d at 282. We, therefore, answer the second question accordingly: a claim for the denial of shareholder status or oppression of shareholder interests under section 12.56 of the Business Corporation Act accrues for purposes of triggering the statute of limitations when the claimant knew or reasonably should have known his or her shareholder rights were denied or had been oppressed and the denial or oppression was wrongfully caused.

¶ 36    We do not find persuasive plaintiffs' argument they must be divested of their

shares before the statute of limitations begins to run. A dispute of shareholder status or oppression can occur without a divestiture of the claimant's shares. In fact, plaintiffs' claims recognize as much. Plaintiffs assert in their complaint they were and are shareholders of Yetter Manufacturing and their shareholder interest has been denied and therefore oppressed.

¶ 37                                             D. Question C

¶ 38           The third question certified to this court is the following: "When does a claim for the conversion of corporate stock accrue for purposes of triggering the statute of limitations under 735 ILCS 5/13-205?"

¶ 39           Plaintiffs urge this court not to answer the third question. Plaintiffs contend defendants presented no evidence to show the conversion occurred before 2018 and, thus, under the five-year limitations period, the question of whether that term expired is irrelevant. In the alternative, plaintiffs propose the following answer: "[A] claim for conversion cannot begin to accrue prior to the date the property was actually converted, and the five-year statute of limitations begins to run only after (1) the property is converted and (2) the injured party knows, or reasonably should have known, the property was converted, and knows or reasonably should know to inquire further."

¶ 40           Defendants argue the proper answer is the following: "[T]he statute of limitations for a claim of the conversion of corporate stock begins to accrue under [section 13-205] when the plaintiffs have inquiry notice that the defendants are failing to honor the plaintiffs' shareholder rights."

¶ 41           Both proposed answers are problematic. Plaintiffs' use of the term "actually converted," particularly when considered with their argument of the lack of evidence of an "actual conversion," implies a conversion of corporate stock cannot accrue until there has been

-14-

an outward declaration of the transfer of ownership. That is not what the law requires, and plaintiffs have cited no authority to establish otherwise. Rather, case law shows "[c]onversion may be based on an exercise of control in a manner inconsistent with plaintiff's right of possession." *Connelly v. Estate of Dooley*, 96 Ill. App. 3d 1077, 1082, 433 N.E.2d 143, 147 (1981).

¶ 42      Defendants' proposal is unconvincing as it expands the question beyond what was asked. There is not simply one means by which a conversion of corporate shares can occur. The certified question to this court was not whether a claim for conversion accrues when the plaintiffs have inquiry notice that the defendants are failing to honor the plaintiffs' shareholder rights. Instead, the question asked by the trial court broadly asks when a conversion of corporate shares accrues.

¶ 43      Because plaintiffs suggest we not answer the question and defendant's answer is not responsive to the question without a consideration of the facts of the case, we decline to answer it. Any answer would be necessarily overbroad and not necessarily helpful to the termination of the parties' litigation.

¶ 44                      III. CONCLUSION

¶ 45      We answer two of the certified questions and remand for further proceedings.

¶ 46      Certified questions answered; cause remanded.

*Thompson v. Whalen*, **2023 IL App (4th) 220668**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McDonough County, No. 21-LL-13; the Hon. Raymond A. Cavanaugh, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher J. Jump, and David G. Lubben, of Davis & Campbell L.L.C., of Peoria, and James R. Carey, and Peter B. Allport, of Levin Schreder & Carey Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Delmer R. Mitchell and Jonathan S. Hoover, of Schmiedeskamp Robertson Neu & Mitchell LLP, of Quincy, for appellees. |